**PUBLISH**

# UNITED STATES COURT OF APPEALS
Filed 4/24/96**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

IRA MURRAY,

    Defendant-Appellant.

No. 95-4125

---

Appeal from the United States District Court
for the Central District of Utah
(D.C. No. 95-cr-26-G)

---

**ON THE BRIEFS:**

John D. O'Connell, Salt Lake City, Utah, for Defendant-Appellant.

Scott M. Matheson, Jr., United States Attorney, and Barbara Bearnson, Assistant U.S. Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **MCKAY** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Mr. Ira Murray was charged with assault with a dangerous weapon with intent to inflict bodily harm on an Indian reservation under 18 U.S.C. §§ 113(a)(3) and 1153(a). After a jury trial, Mr. Murray was convicted as charged. The district court enhanced Mr. Murray's sentence for aggravated assault under the Sentencing Guidelines by adding to his base offense level five levels because a firearm was discharged, and three levels because the victim suffered more than bodily injury but less than serious bodily injury. Mr. Murray contends the district court erred in the application of the guidelines because (1) the firearm was not discharged during the course of the assault; and (2) the court failed to make specific findings regarding disputed facts. We affirm.[1]

I.

Mr. Murray and Mrs. Angelina Murray were married for seven years prior to their divorce in October 1994. Mrs. Murray was awarded custody of their three children and the mobile home in which they resided. On February 2, 1995, Mrs. Murray obtained a restraining order against Mr. Murray following an argument at her home during which he became verbally abusive.

On February 10, Mr. Murray broke into Mrs. Murray's home at approximately

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

6:00 a.m. Mrs. Murray found Mr. Murray in the kitchen with a loaded assault rifle. He told her she was going to die as he pushed her into the living room with his teen-aged niece and his three children. Mr. Murray struck his niece twice, once with the rifle and once with his hand, then instructed her to place herself and the children in a bedroom closet.

Mr. Murray then told Mrs. Murray she had to choose one of several options, stating that he could either: (1) kill Mrs. Murray and himself; (2) kill all the children; (3) kill the youngest child and himself; (4) kill Mrs. Murray's mother; or (5) kill only himself. He testified that he hoped she would choose the last option. When Mrs. Murray attempted to dissuade Mr. Murray from all of the aforementioned actions, Mr. Murray repeatedly struck her with his rifle on the top of her head and on her knees and shins. Mr. Murray testified that he struck Mrs. Murray while she was trying to take the gun away from him, and that he never intentionally hit her. Mrs. Murray testified that as she sat, Mr. Murray would strike her several times, speak to her, and then begin striking her again. She did not testify that she ever tried to take away the gun.

When Mr. Murray went into the kitchen to light a cigarette, Mrs. Murray ran out the front door and down the road. Mr. Murray went out the front door after her and fired several shots. He testified he fired the shots to stop Mrs. Murray from fleeing. Nevertheless, Mrs. Murray reached a neighbor's home, bleeding from her head, hands and legs, and called the police. Mr. Murray went back inside Mrs. Murray's home,

apologized to his niece, and told her to take the children to the neighbor's house where they would find Mrs. Murray.

Police officers and Mrs. Murray later talked Mr. Murray out of killing himself and into surrendering. During the negotiations, Mr. Murray apologized to Mrs. Murray for his behavior.

Mrs. Murray suffered multiple injuries. She had a deep scalp laceration, approximately two inches long, with an associated contusion. She also suffered contusions on her face, and contusions and puncture-type lacerations which required sutures on the front of both her legs. The treating physician at the emergency room described her as emotionally distraught.

II.

In sentencing Mr. Murray, the district court calculated his offense level under U.S.S.G. § 2A2.2, which governs aggravated assault.[2] Under that guideline, the base offense level of fifteen is increased on the basis of specific offense characteristics. The court here applied section 2A2.2(b)(2)(A), under which the base level is increased by five if a firearm was discharged. Mr. Murray contends the district court should not have applied section 2A2.2(b)(2)(A) because specific offense characteristics apply only to

---

[2] The guidelines define aggravated assault as, inter alia, conduct that involves "a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten)." U.S.S.G. § 2A2.2, comment. (n.1).

conduct which occurs during the commission of the offense for which the defendant was convicted. According to Mr. Murray, because the shots were fired "after" the assault for which he was convicted, that conduct cannot be used to increase his base offense level. We are not persuaded.

We review the district court's factual determinations for application of the guidelines under the clearly erroneous standard. United States v. Pelliere, 57 F.3d 936, 940 (10th Cir. 1995). The district court's legal conclusions regarding the guidelines are subject to de novo review. United States v. Johnson, 42 F.3d 1312, 1320 (10th Cir. 1994), cert. denied, 115 S.Ct. 1439 (1995).

Under the guidelines, specific offense characteristics "shall be determined on the basis of . . . all acts and omissions . . . caused by the defendant . . . that occurred during the commission of the offense of conviction . . . or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). The Eleventh Circuit recently addressed this issue under similar facts. In United States v. Williams, 51 F.3d 1005 (11th Cir.), cert. denied, 116 S. Ct. 258 (1995), the defendant attempted a carjacking. When the defendant approached the vehicle, the passenger shot at him and sped away. Id. at 1011. The defendant fired shots after the fleeing vehicle. Id. The court held the defendant discharged his firearm during the commission of the offense, stating that "the commission of the carjacking did not magically cease the moment he backed away from [defendant's] truck." The court also reasoned that the firearm was

discharged in an "'effort to avoid detection or responsibility.'" Id. (citing U.S.S.G. § 1B1.3(a)(1)).

In the instant case, Mr. Murray assaulted his wife, beating her repeatedly with a rifle. She fled from her home when he went into the kitchen to light a cigarette. Mr. Murray testified that he fired the shots because he "tried to get her to stop." Rec., vol. III, at 130. Had Mr. Murray succeeded in his attempt to stop Mrs. Murray, he could have continued his attack and delayed or avoided detection. See U.S.S.G. § 1B1.3(a)(1). We hold that the district court did not clearly err in increasing Mr. Murray's offense level on the basis of discharging the firearm.[3]

## III.

Mr. Murray also argues that a remand is required because the district court failed to make specific findings on contested issues material to acceptance of responsibility and to the extent of Mrs. Murray's injuries. Federal Rule of Criminal Procedure 32(c)(1)

---

[3] Mr. Murray argues for the first time in his reply brief that the court did not make adequate fact findings on whether the firearm was discharged during the course of the assault. We decline to consider arguments raised for the first time in a reply brief. See Sadeghi v. INS, 40 F.3d 1139, 1143 (10th Cir. 1994); United States v. Tisdale, 7 F.3d 957, 961 n.3 (10th Cir. 1993), cert. denied, 114 S. Ct. 1201 (1994).

We likewise need not address Mr. Murray's alternative argument that a four-level enhancement under U.S.S.G. § 2A1.2(b)(2)(B), applicable when a dangerous weapon was otherwise used, would constitute double counting.

provides that when a sentencing matter is controverted, "the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing."

> "When faced with specific allegations of factual inaccuracy by the defendant, the court cannot satisfy [Rule 32(c)(1)] by simply stating that it adopts the factual findings and guideline application in the presentence report. If the district court fails to comply with Rule 32[], we must remand for the court to either make the necessary findings and attach them to the presentence report, or enter a declaration that it did not take the controverted matters into account in sentencing the defendant."

United States v. Pedraza, 27 F.3d 1515, 1531 (10th Cir.) (citation omitted), cert. denied, 115 S. Ct. 520 (1994).

Mr. Murray asserts that the district court erred by failing to make a fact finding on whether he apologized to his wife. He contended during the sentencing hearing that his apology to his wife constituted acceptance of responsibility and therefore his offense level should have been reduced three levels under U.S.S.G. § 3E1.1. Although the government asserted in its addendum to the presentence report that Mr. Murray did not apologize, during the sentencing hearing the government argued that Mr. Murray's apologies did not constitute acceptance of responsibility. The district court rejected Mr. Murray's argument that his sentence should have been reduced for acceptance of responsibility and stated "I rely on the Presentence Report and the trial itself with respect to the factual basis for the sentence." Rec., vol. III, at 24. The trial included testimony from Mrs. Murray that Mr. Murray apologized to her after the assault and immediately before his arrest. We are not

persuaded that whether Mr. Murray apologized to his wife was a disputed fact: the government did not dispute the apology during the sentencing hearing; the district court stated that it relied on the trial itself; and Mrs. Murray testified during the trial that Mr. Murray apologized. We therefore hold that whether Mr. Murray apologized was not a controverted factual matter which required the court to make a specific finding under Rule 32(c)(1).

Mr. Murray also contended during the sentencing hearing that Mrs. Murray suffered no more than bodily injury and therefore only two levels should have been added to his offense level instead of three. Under U.S.S.G. § 2A2.2(b)(3), two levels are added to the base offense level if a victim sustained bodily injury, four levels if the victim sustained serious bodily injury, and three levels if the victim sustained injury between bodily injury and serious bodily injury.

In its addendum to the presentence report, the government asserted that Mrs. Murray described her wounds as extremely painful and stated she was temporarily incapacitated as a result of the assault. Mr. Murray challenged the addendum's recitation of Mrs. Murray's statements as a basis for finding that Mrs. Murray suffered more than bodily injury. During the sentencing hearing, the government did not rely on the statements in the addendum, but instead relied upon the testimony at trial that Mrs. Murray was struck in the head with the rifle, which caused extreme physical pain. The district court stated, "I heard all the testimony on that and it seems to me that's completely

true." Rec., vol. III, at 20. It is apparent from the record the district court found that evidence of the blows from the rifle, coupled with other testimony of Mrs. Murray's injuries, supported the conclusion that Mrs. Murray received more than bodily injury. We therefore conclude the district court did not rely on the alleged statements of Mrs. Murray in the presentence report addendum to determine Mr. Murray's sentence.

We AFFIRM the judgment of the district court.