**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 9, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EDUARDO RODRIGUEZ-DELMA, also
known as Javier Eduardo Rodriguez,

      Defendant-Appellant.

No. 05-3297

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 04-CR-40096-RDR)**

---

Submitted on the briefs:

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States
Attorney, with him on the brief), Topeka, Kansas, for the Plaintiff-Appellee.

Michael M. Jackson, Topeka, Kansas, for the Defendant-Appellant.

---

Before **MURPHY**, **HOLLOWAY** and **McKAY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

      Eduardo Rodriguez-Delma pled guilty to two counts of an information charging

conspiracy to possess with intent to distribute 100 kilograms or more of a marijuana

mixture, in violation of 21 U.S.C. § 846, and for possession of a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The United States District Court for the District of Kansas applied a four level sentencing enhancement for his role as an organizer or leader pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1. Rodriguez-Delma appeals, contending that (1) the Government breached his plea agreement by providing the court with information concerning his activities in the criminal enterprise because the Government agreed, under the plea agreement, "not to oppose" his position that his base offense level not be increased for his role in the offense; and (2) the district court erred in applying the four level enhancement pursuant to U.S.S.G. § 3B1.1.

We have jurisdiction under 28 U.S.C. § 1291. Because we find no errors in the district court's rulings, we AFFIRM.

## BACKGROUND

On September 8, 2004, the Topeka, Kansas Grand Jury charged Rodriguez-Delma in an eight-count Superseding Indictment with various immigration, firearms, and drug offenses. On April 8, 2005, he entered guilty pleas to Counts 6 and 8 of the Superseding Indictment. (Vol. I, Doc. 47, at 1-20 (Petition to Enter Plea and Plea Agreement)). Count 6 charged him with conspiracy to possess with intent to distribute 100 kilograms or more of a marijuana mixture, in violation of 21 U.S.C. § 846. Count 8 charged him with possession of a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Rodriguez-Delma entered his plea pursuant to a plea agreement with the Government. In that plea agreement, the Government agreed to make certain recommendations and non-recommendations to the district court with respect to sentencing. One such agreement was that the Government would "not oppose [the defendant's contention that his] base offense level not be increased for his role in the offense."

On June 1, 2005, the Probation Office disclosed its initial Presentence Investigation Report (PSR). The PSR recommended that Rodriguez-Delma receive a 4-level enhancement for his role in the offense as an organizer or leader of five or more people, pursuant to § 3B1.1(a)[1] of the U.S.S.G. The PSR recited the following statements about Rodriguez-Delma's role in the offense:

> The defendant was an organizer or leader of this offense which involved five or more people. The defendant arranged for others to transport marijuana to the U.S., from Mexico, which they got from the defendant's uncle, in Mexico. The defendant purchased vehicles and registered them in the names of other people. After being used to transport marijuana, the vehicles were registered back to the defendant, or to another person who would then use [them] to

---

[1] U.S.S.G. § 3B1.1 states in pertinent part as follows:

**3B1.1  Aggravating Role**

Based on the defendant's role in the offense, increase the offense level as follows:

(a)  If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

(Emphasis in original).

transport drugs. The participants in this offense, other than the defendant, include Julie Plummer, Pedro Morales, Billie Joe Pike, and Pedro Mariscal-Regalado (who helped the defendant move and re-package drugs within his residence). All of these defendants were later convicted of various charges. In addition, others . . . involved in this offense include Ignacio Cuevas and Gary Matthews, who both had the 1995 Buick registered in their names that Plummer used in December 2003 to transport marijuana, and both were documented to have crossed the U.S. border at Presidio, Texas, in 2003 and 2004 in that car.

(Vol. III, at 12-13 (PSR ¶ 45)). The PSR noted that the information supporting this enhancement came from Immigration and Customs Enforcement (ICE), the Drug Enforcement Agency (DEA), the Kansas Bureau of Investigation (KBI), the United States Attorney's Office, and through an independent inquiry of the Probation Office. (*Id*. at 7 (PSR ¶ 19)).

Rodriguez-Delma filed his objections to the PSR on July 11, 2005. He objected to the role enhancement and contended that the facts show a relatively small criminal enterprise that did not require extensive planning or preparation. He also stated that there are no clearly delineated divisions of responsibility and no evidence of the relative relationship between him (the defendant) and co-defendant Morales. (*See* Vol. I, Doc. 54, at 2 (¶ 5)).

The Government filed a response on July 14, 2005. In this response, the Government reiterated its position on the role enhancement but stated, however, that its agreement "not to oppose" the Defendant's contention that his base offense level not be increased for his role in the offense was "purely a function of plea negotiation and had nothing to do with the strength of the evidence relative to the adjustment proposed by the

-4-

PSIR." (Vol. I, Doc. 55, at 8). The Government also summarized ICE Agent Tim

Ditter's investigation concerning the scope of the defendant's criminal activities:

> Agent Ditter's investigation revealed that the defendant was involved in an operation which brought drugs from his uncle in Mexico, across the border, to the Topeka, Kansas, area. The process involved several steps, which the defendant executed. He purchased cars, put them in the names of 'mules' only temporarily, so they could transport the drugs, send them to Mexico to have the car loaded, then met them in Texas to re-load the drugs for further delivery to Kansas. Upon return, he would have the car put in someone else's name, who would then use it to make another trip.

(*Id*. at 5-6).

The district court sentenced Rodriguez-Delma on July 22, 2005. At this hearing,

Rodriguez-Delma's counsel suggested that the Government improperly related facts

touching on the defendant's role in its response, Document 55, but he did not accuse the

Government of breaching the plea agreement:

> If you go back to Mr. Hough's responses to my objection he has a little sentence there that says we take the position of our plea agreement, but if you go back a couple paragraphs before there's detailed statements on the role of the offense of my client. And now we learn that there apparently may have been a truck involved. We're not asking to withdraw this plea, we're just asking for fairness from the federal–from the federal prosecutor.

(Vol. II, at 10).

During that hearing, however, the Government reaffirmed its non-opposition to the

defendant not receiving the role enhancement several times. (Vol. II, at 5 ("We don't

oppose no enhancement for role in the offense. We would . . . ask the Court to follow the

plea agreement."); 17 (restating paragraph 5(f) of the plea agreement and stating "the

Government's position has never changed"); 18 ("We ask the Court to follow that plea

agreement."); 19 ("Additionally we reiterate reaffirm our position under the plea agreement in all regards."); 21 (*"Again, Judge, we don't oppose no enhancement for role."*)) (emphasis added).

The Defendant's counsel renewed his objection to the role enhancement at the sentencing hearing. However, the only factual objection he raised was that the interrelationship of the parties was not clear. Based on this, he argued that "there's insufficient evidence to increase for three, even based on a preponderance of the evidence." (*Id*. at 21).

The district court denied Rodriguez-Delma's objections and after applying the role enhancement and hearing the evidence on drug quantities, sentenced him to 87 months' imprisonment on Count Six and 60 months on Count Eight, to be served consecutively.

## DISCUSSION

As noted, Rodriguez-Delma appeals on two grounds. First, he contends that the Government breached the plea agreement by providing the district court with information concerning his activities in the criminal enterprise. Second, he contends that the district court erred by applying a four-level enhancement to his sentence pursuant to U.S.S.G. § 3B1.1(a). We address each of these arguments in turn below.

### 1. The Alleged Breach of Plea Agreement

Rodriguez-Delma's first argument is that the Government breached the plea agreement by providing the district court with information concerning his activities in the criminal enterprise. He points out that the Government agreed to "not oppose that [the] base offense level not be increased for his role in the offense." Therefore, he contends

that the Government breached the plea agreement by including the following statement in its written response to his objections to the sentence enhancement:

> Agent Ditter's investigation revealed that the defendant was involved in an operation which brought drugs from his uncle in Mexico, across the border, to the Topeka, Kansas, area. The process involved several steps, which the defendant executed. He purchased cars, put them in the names of 'mules' only temporarily, so they could transport the drugs, send them to Mexico to have the car loaded, then met them in Texas to re-load the drugs for further delivery to Kansas. Upon return, he would have the car put in someone else's name, who would then use it to make another trip.

(Vol. I, Doc. 55 at 5-6 (cited in Aplt. Br. at 4, 6, 8-9)).  This statement, he argues, "is not fulfilling a promise to not comment on defendant's role in the offense"(Aplt. Br. at 9) and constitutes a "legal characterization" of his activities.  He also argues that the Government attempted to "emasculate both its promise and the entire plea agreement," by stating in its written response that "the government's decision to accept the term of the plea agreement, which benefits only the defendant, was purely a function of plea negotiation and had nothing to do with the strength of the evidence relative to the adjustment proposed by the PSIR."  (*See* Aplt. Br. at 8).

"A claim that the government has breached a plea agreement is a question of law we review de novo, even where the defendant failed to object at the time of the alleged breach."  *United States v. Werner*, 317 F.3d 1168, 1169 (10th Cir. 2003).  *See United States v. Peterson*, 225 F.3d 1167, 1170 (10th Cir. 2000) ("[T]his circuit has held that a defendant does not waive his right to appeal a claim that the government has breached a plea agreement when he fails to object to the breach before the district court.").

In order to determine whether a breach has occurred, we "1) examine the nature of

the promise; and 2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *United States v. Guzman*, 318 F.3d 1191, 1195-96 (10th Cir. 2003). "General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement." *Id*. at 1195.

Contrary to Rodriguez-Delma's assertions, the record shows that the Government was authorized in this case to inform the court and the probation office about all of the defendant's conduct, without limitation. Paragraph 13 of the plea agreement specifically provided that the Government "will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include . . . the entirety of the defendant's criminal activities." (Vol. I, Doc. 47 (Plea Agreement ¶ 13)). The same paragraph also stated: "The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty. The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies." (*Id*).

Thus, under paragraph 13, the Government was expressly allowed to make factual representations concerning Agent Ditter's investigation because these statements touched on "the entirety of the defendant's criminal activities." Defendant says: "Mr. Rodriguez-Delma, would have reasonably understood the prosecutor to be promising that 'if you agree to waive a majority of your constitutional rights and plead guilty to conspiracy, then in exchange the United States will not comment, in any fashion, on your role in the

conspiracy.'" (Aplt. Br. at 8). However, because the Government was permitted to discuss "the entirety of the defendant's criminal activities" under the plea agreement, discussion of the scope of the defendant's criminal activity was necessarily permitted as well, as long as such a discussion did not rise to the level of advocacy for the role enhancement.

Rodriguez-Delma contends that the Government's use of the terms "executed," "several steps," "process," and "operation," in its summary of Agent Ditter's investigation constitutes legal characterization of his activities and, thus, amounts to opposition to his objections to the role enhancement. However, the record shows that his drug-trafficking conduct did encompass "several steps" and there was a "process" or "operation" that he "executed." We feel that the words are factually accurate, legally neutral, and non-argumentative. They simply validated facts already stated in the PSR. *Cf. United States v. Brye*, 146 F.3d 1207 (10th Cir. 1998) (Government breaches plea agreement "not to oppose" a defendant's motion for downward departure when Government makes statements that do more than merely state facts or simply validate facts found in the presentence report and provides a legal characterization of those facts or argues the effect of those facts to the sentencing judge.). Rodriguez-Delma did not dispute the accuracy of these facts. Therefore, we feel the use of the terms by the Government did not rise to the level of advocacy.

Moreover, consideration of the entire record shows that the Government repeatedly stated that it did not oppose Rodriguez-Delma receiving no enhancement for his role. The Government made such statements both in its written response and during

the sentencing hearing in this case. (*See* Vol I., Doc. 55 at 7 (Government's Responses to Defendant's Objections to the PSR) ("The government's position regarding an enhancement for role in the offense is dictated by paragraph 5.f. of the plea agreement"); *see also* Vol. II (Sentencing Transcript), at 5 ("We don't oppose no enhancement for role in the offense. We would . . . ask the Court to follow the plea agreement."); 17 (restating paragraph 5(f) of the plea agreement and stating "the Government's position has never changed"); 18 ("We ask the Court to follow that plea agreement."); 19 ("Additionally we reiterate reaffirm our position under the plea agreement in all regards."); 21 ("Again, Judge, we don't oppose no enhancement for role.")). We are persuaded that these comments demonstrate the Government's intent to fulfill its obligations under the plea agreement. Indeed, the district court specifically found that the Government did not advocate the enhancement both during the sentencing hearing and in its Memorandum and Order dated July 25, 2005. Vol. II, at 23; Vol. I, Doc. 58 at 3.

Because the plea agreement specifically permitted the Government to provide information to the court and the probation office concerning the entirety of Defendant's criminal activities, and because the Government repeatedly disavowed any opposition to Rodriguez-Delma's objections to the sentence enhancement, we conclude that the Government did not breach the plea agreement.[2]

---

[2] We distinguish this case from our recent opinion in *United States v. Scott*, 05-6082 (filed July 31, 2006). In *Scott*, the Government expressly advocated the enhancement of defendant's sentence in response to the court's inquiry concerning enhancement. There, we stated that the Government could have responded to the court's inquiry without engaging in advocacy and held that such advocacy breached the defendant's plea agreement with the Government. *See Scott* (Majority Opinion) at 7, fn2

## 2. Alleged Error In Role Enhancement

Rodriguez-Delma next contends that the district court erred in applying U.S.S.G. § 3B1.1 to enhance his sentence by four levels. He claims that the district court failed to comply with Rule 32(c)(1)[3] and impermissibly relied on the PSR to make the necessary factual findings for the enhancement. (*See* Aplt. Br. at 11-12) (*See also* Aplt. Br. at 6 ("When a sentencing matter is controverted the rule in the 10th Circuit is that a district court may not satisfy the obligation under Rule 32(c)(1) by simply adopting the presentence report as its finding.")). However, he does not argue that the district court's factual findings were insufficient as a matter of law to warrant the role enhancement, nor does he argue that the district court's factual findings were clearly erroneous.[4]

---

("the government could have responded without breaching either the plea agreement or its duty of candor to the court by providing accurate answers to the court's queries and explaining its obligations under the plea agreement without expressly arguing for the upward departures"). In the instant case, the Government merely provided factual information to the court without engaging in advocacy. As noted above, the Government took pains to repeatedly state, and the district court found, that it was not advocating the role enhancement.

[3] On December 1, 2002 (before the district court sentenced the defendant in this case), amendments to the Federal Rules of Criminal Procedure replaced Rule 32(c)(1) with Rule 32(i)(3). Rule 32(i)(3)(B) states that "for any disputed portion of the presentence report or other controverted matter" during sentencing, the court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed.R.Crim.P. 32(i)(3)(B) (2003). "This new rule attempts to eliminate confusion over whether courts were required to make rulings on every objection to the PSR or only those that have the potential to affect the sentence." *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003) (citing Fed.R.Crim.P. 32(i)(3) advisory committee's notes).

[4] Because the defendant does not make this argument on appeal, clear error review of the district court's factual findings and de novo review of its application of the Guidelines is unnecessary.

This court reviews compliance with the Rules of Criminal Procedure de novo. *United States v. Kravchuk*, 335 F.3d 1147, 1160 (10th Cir. 2003). Rule 32(i)(3)(B) requires that the sentencing court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Further, Rule 32(i)(3)(A) provides that the district court "may accept any undisputed portion of the presentence report as a finding of fact."

We have previously stated that a sentencing court does not satisfy its Rule 32 obligation by "simply adopting the presentence report as its finding." *United States v. Guzman*, 318 F.3d 1191, 1198 (10th Cir. 2003). Nonetheless, to invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make "specific allegations" of factual inaccuracy. The fact that a defendant has objected to the ultimate conclusions drawn by the PSR, however, does not necessarily imply that a 'controverted matter' exists. *United States v. Murray*, 82 F.3d 361, 363 (10th Cir. 1996) (quoting *United States v. Pedraza*, 27 F.3d 1515, 1531 (10th Cir. 1994)); *see also United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) (defendant's rebuttal evidence must demonstrate that information in PSR is materially untrue, inaccurate or unreliable). Arguments that 'challenge [ ] the district court's application of the guidelines to the facts and not the facts themselves' do not trigger any obligation on the part of the district court to make specific findings. *United States v. Windle*, 74 F.3d 997, 1002 (10th Cir. 1996); *see also United States v. Hall*, 212 F.3d 1016, 1023 (7th Cir. 2000) (defendant must offer

-12-

evidence beyond his own mere denials to prompt further inquiry into disputed sentencing issues).

During the sentencing hearing, Rodriguez-Delma's counsel made the following statement which he claims should have invoked the district court's fact-finding obligation: "[T]he facts here show a relatively small criminal enterprise that did not require extensive planning or preparation. There are no clearly delineated divisions of responsibility and no evidence of the relative relationship between the defendant and co-defendant Morales." (Aplt. Br. at 12 (quoting Vol. I, Doc. 54 (Objections to the Presentence Investigative Report), at 2 (¶ 5)). But, his objection did not address the factual accuracy of the statements made in the PSR, namely paragraphs 20-30, offered in support of the enhancement. Indeed, his statement in his objection did not allege any factual inaccuracy. On the contrary, the statement was untethered to any factual statement in the PSR and amounted to a conclusory characterization of the scope and nature of his criminal enterprise. Accordingly, it is insufficient to trigger the district court's fact finding obligation.

Moreover, the record shows that Rodriguez-Delma did not dispute the facts when the district court questioned him about "undisputed facts" in the PSR. During the sentencing hearing, the district court asked Defendant's counsel directly about the sufficiency of the evidence for the role enhancement and gave him an opportunity to directly contest the facts supporting the enhancement:

THE COURT: Let me just give you a little bit here. It is undisputed that

more than five persons were involved in the criminal activity in this case.[5] These persons included defendant Julie Anne Plummer; Chente Rodriguez; Pedro Morales; Ignacio Cuevas; Gary Matthews; Heather Shaw; . . . Billi Joe Pike, and Pedro Marischal Regalado. It is undisputed that the defendant recruited persons to transfer marijuana from Mexico to Kansas.[6] It is undisputed that the defendant stored the marijuana when it reached Kansas.[7] It is undisputed that the defendant paid persons such as Plummer and Pike for transporting drugs.[8] It is undisputed that the defendant purchased vehicles and arranged for the vehicles to be registered in the name of different persons to facilitate the transportation of the drugs.[9]

And now looking at his role, thus the defendant exercised decision making authority.[10] He recruited accomplices, he participated substantially in planning and organization. He controlled the location and storage of drugs. Defendant asserts that the criminal enterprise was relatively small, that it did not require extensive planning or preparation and there was no evidence of the relationship and the relative responsibility between the defendant and Pedro Morales.

Now, the question is, with all that information, you want to say something further that would persuade the Court that a role enhancement is not unjustified?

It is clear that the offense required considerable planning. Defendant obviously was one of the organizers and leaders, if–if not the only one. The size of the criminal enterprise is not so small as to exclude defendant from this role adjustment. And finally, *we understand the Government is not advocating a role adjustment*. The undisputed facts in the presence report however justify the Court taking this into consideration.

You want to say anything further now after what I've said there about the role in the offense?

(Vol. II, at 21-23) (emphasis added).

---

[5] *See* Vol. II (PSR ¶¶ 21, 30, 45 ).

[6] *See id*. at ¶¶ 21, 26.

[7] *See id*. at ¶ 26, 30.

[8] *See id*. at ¶¶ 21, 26.

[9] *See id*. at ¶¶ 21, 24.

[10] *See Id.* at ¶¶ 21, 26, 30.

Rodriguez-Delma's counsel did not contest these undisputed facts. Instead, in his non-specific response, he concurred with the district court: "Only that it's the purpose of 3(b) 1.1 to attack organized crime. And they use words like kingpin and boss and that's not what we have before the Court. Other than that, I think you summarized everything quite well. Thank you." (*Id*. at 23).

Rodriguez-Delma is required to make "specific allegations of factual inaccuracy." *See United States v. Murray*, 82 F.3d 361, 363 (10th Cir. 1996). He had "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). The fact that he objected to the conclusion in the PSR is not sufficient to imply that a controverted matter exists. Because he failed to make any allegations of factual inaccuracy, the district court's fact-finding obligation under Rule 32(i)(3)(B) was never triggered. Therefore, it was not error for the district court to adopt the uncontested facts in the PSR pursuant to Rule 32(i)(3)(A).

Accordingly, the district court's judgment is affirmed.