**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ARTURO SOLANO-RAMOS, a/k/a
Luis Garcia, a/k/a Arturo Solano,

Defendant-Appellant.

No. 06-2153

(D. New Mexico)

(D.C. No. CR 06-453 JC)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **HARTZ,** and **HOLMES**, Circuit Judges.

Arturo Solano-Ramos was convicted of illegal re-entry after having

being convicted of an aggravated felony. He contends that the district court

violated Fed. R. Crim. P. 32(i)(3)(A) and consequently erred when it

enhanced his sentence sixteen-levels under 8 U.S.C. § 1326(b)(2) and USSG

2L1.2(b)(1). Mr. Solano-Ramos argues that there were highly unusual

circumstances surrounding his underlying 1990 state court conviction for an

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

aggravated felony that warrant a reduced sentence. Because he did not bring a bona fide Rule 32 factual dispute to the district court's attention, we affirm Mr. Solano-Ramos's sentence.

## I. FACTUAL BACKGROUND

On March 6, 2006, Mr. Arturo Solano-Ramos, pleaded guilty to a one-count information that accused him of being an illegal alien who re-entered the United States subsequent to having been convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(2). On May 25, 2006, the district court conducted a sentencing hearing. The district court sentenced Mr. Solano-Ramos to 77 months' imprisonment.

### 1. The Federal Offense

Mr. Solano-Ramos is a citizen and native of the Republic of Mexico. On May 31, 2005, the Bureau of Immigration and Customs Enforcement was advised that Mr. Solano-Ramos was being held at the Bernalillo County Metropolitan Detention Center. Mr. Solano-Ramos identified himself with an alias, but fingerprints revealed his true name and the fact he was a previously deported aggravated felon. When found, Mr. Solano-Ramos had not received the express consent of the Secretary of Homeland Security to apply for readmission, in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(2)

### 2. The State Court Conviction

On June 17, 1989, Mr. Solano-Ramos was with a friend at a bar in New Mexico. His friend got into a dispute with the bar's bouncer, who proceeded to escort the two men out of the bar. As Mr. Solano-Ramos drove out of the parking lot, his cohort, seated in the front passenger seat, fired a weapon into the bar, killing the bouncer and injuring another person. The presentence investigative report ("PSR") indicates that witnesses stated that Mr. Solano-Ramos fired shots as well. According to an affidavit submitted by Mr. Solano-Ramos's state court defense counsel, there was only "tenuous" evidence showing that her client knew of his companion's plans. Aplt's Br. Att. A, at 1. The State charged Mr. Solano-Ramos with first-degree murder, among other charges.

Mr. Solano-Ramos entered into a plea agreement, in part, he claimed, because his counsel feared community hostility against him because of his immigrant status and because of recent violence erupting in bars in the same neighborhood. His counsel stated that Mr. Solano-Ramos faced mandatory life imprisonment if the jury convicted him of first-degree murder.

Upon counsel's recommendation, Mr. Solano-Ramos entered a no-contest plea to conspiracy to commit second-degree murder. He received a three-year suspended sentence, was placed on three years' probation, and he received a recommendation against deportation. After Mr. Solano-Ramos was released from state prison, he was removed from the United States to

the Republic of Mexico, but was subsequently found and convicted of illegal reentry on December 6, 1991, on July 17, 1993, and again on April 2, 1999. He was sentenced to six months, thirty months, and seventy months, respectively, for these offenses.

3. The Plea Hearing

During the plea colloquy, the United States stated that Mr. Solano-Ramos "had previously been convicted of an aggravated felony, to wit, conspiracy to commit second-degree murder." Rec. vol. III, at 8. When the court asked if the facts stated by the United States were "essentially what occurred in this case," Mr. Solano-Ramos replied "Yes, sir." *Id.*

The district court accepted Mr. Solano-Ramos's guilty plea to the information and found he was "fully competent and capable of . . . entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea, supported by independent evidence of the elements of the offense charged." *Id.* at 8-9.

4. The PSR

The PSR determined that the total offense level was 21. The base offense level was 8 pursuant to USSG § 2L1.2(a). The PSR recommended that sixteen levels should be added pursuant to USSG § 2L1.2(b)(1)(A)(ii) because Mr. Solano-Ramos had been deported after a conviction for an

aggravated felony for a crime of violence (the New Mexico state conviction for conspiracy to commit second-degree murder). Mr. Solano-Ramos received a three-level deduction pursuant to USSG § 3E1.1 because he accepted responsibility for his criminal conduct.

Mr. Solano-Ramos's thirteen criminal history points placed him in Criminal History Category VI. Because of the age of the conviction, the PSR did not recommend increasing Mr. Solano-Ramos's criminal history points for the conspiracy to commit second-degree murder conviction. A total offense level of 21 combined with a criminal history category of VI yielded a guideline range of 77-96 months.

5. Mr. Solano-Ramos's Objections to the PSR

Mr. Solano-Ramos filed objections to the PSR and argued the unusual circumstances of his prior state conviction "warrant[ed] a sentence lower than the advisory guidelines for the typical reentry case." Rec. vol. I, doc. 17, at 6. He said he had "ple[d] no contest to this very serious charge [of conspiracy to commit second-degree murder] despite the fact that he had always insisted that he was innocent and the investigation of his attorney, Ms. Kari Converse, turned up nothing to contradict this." *Id*. at 5-6.

6. The Sentencing Hearing

At the sentencing hearing, Mr. Solano-Ramos indicated through his counsel that he had reviewed the presentence report and that there was

nothing in it that he wished specifically to call to the court's attention. Mr. Solano-Ramos agreed that his formal objections had been resolved and that the sentencing guideline calculations were correct. Then, the following colloquy occurred among the court, defendant, and his defense counsel:

> The Court: All right. Mr. Solano-Ramos, do you have anything you wish to say before I impose sentence?
>
> The Defendant: I want to say I'm sorry to be here in court.
>
> The Court: You what?
>
> The Defendant: I'm sorry for being here again in the United States.
>
> The Court: You have a heck of a criminal record. Ever since you've been in this country, you haven't done anything right.
>
> The Defendant: I got blamed for something I didn't do.
>
> Mr. Gandert [counsel for defendant]: Your Honor, if I may address that? . . . . In 1990, after being in the United States for almost sixteen years, he pled no contest to conspiracy to commit second degree murder, which was a third degree felony. Mr. Solano-Ramos indicated to me that *he was totally not guilty of that charge*.

Rec. vol. IV, at 5-6 (emphasis supplied).

The court applied the sixteen-level increase based on Mr. Solano-

Ramos's conviction for a crime of violence. *Id*. at 13-14. The advisory guideline range was 77 to 96 months, based on a total offense level of 21 and a criminal history category VI.

In considering the 18 U.S.C. § 3553(a) sentencing factors, the district court stated:

> Well, as a matter of fact, I reduced the sentence from 87 months to 77 months. . . . I thought he needed more. One of the problems is, the State, when they sentence them, they always put them on probation. . . . You know, a State sentence is eight years, seven years suspended. So he's in the big leagues now, and he gets to go to jail. And I've considered all of those things. No, I had to scratch out 88 and put in 77 because I was going to give him more. . . .
>
> He's done nothing since he got in the United States except commit crimes . . . . So he doesn't get any sympathy from me.

*Id*. at 16-17. The court accordingly imposed a sentence of 77 months' imprisonment.

## II. DISCUSSION

Mr. Solano-Ramos maintains that the district court failed to meet its Rule 32(i)(3)(b) obligations because it failed to clearly resolve the parties' dispute as to the circumstances surrounding Mr. Solano-Ramos's previous conviction for conspiracy to commit second-degree murder. Rule 32(i)(3)(b) requires a sentencing court, when a defendant presents "any disputed portion of the presentence report or other controverted matter," to "rule on the dispute or determine that a ruling is unnecessary either because

-7-

the matter will not affect sentencing, or because the court will not consider the matter in sentencing." FED. R. CRIM. P. 32(i)(3)(B).

Mr. Solano-Ramos insists he is not challenging the validity or existence of that conviction, rather he contends that the district court should have resolved the facts surrounding the conviction. He notes his unwavering insistence upon his innocence; his lack of knowledge involving his passenger who killed the bar's bouncer; state defense counsel's explanation of her recommendation to enter the plea bargain; the state court's imposition of a lenient sentence of three years' probation; and the state court's recommendation against deportation.

Nevertheless, we disagree with Mr. Solano-Ramos that he properly invoked Rule 32. At the sentencing hearing, defense counsel acknowledged that his objections to the PSR had been addressed. Rec. vol. IV, at 4-5. Shortly thereafter however, defense counsel stated that: "Mr. Solano-Ramos indicated to me that he was totally not guilty of that charge, and I talked to him about that charge." *Id.* at 6. Counsel argued that the defense counsel from the state court proceeding "essentially verified everything that Mr. Solano-Ramos stated. She indicated to me that he ple[d] no contest because she was concerned about losing at trial. The stakes were exceedingly high [i.e. possible conviction for first-degree murder]." *Id.* at 6-7. These arguments may appropriately challenge the nature and circumstance of his

offense under § 3553(a), but the district court weighed this argument at the sentencing hearing.

Even if we were to assume that Mr. Solano-Ramos's reading of the unusual circumstances of the state court offense did invoke Rule 32, this challenge also fails. Under Rule 32, Mr. Solano-Ramos "is required to make 'specific allegations of factual inaccuracy.'" *United States v. Rodriguez-Delma*, 456 F.3d 1246, 1254 (10th Cir. 2006) (quoting *United States v. Murray*, 82 F.3d 361, 363 (10th Cir.1996)), *cert. denied*, 2007 WL 130169 (Feb. 20, 2007). Once a defendant raises such allegations, the district court must provide a "definite and clear" ruling on a disputed issue. *United States v. Williams*, 374 F.3d 941, 947 n.9 (10th Cir. 2004).

Although Mr. Solano-Ramos tries valiantly to re-frame the factual dispute otherwise, the only fact counsel points to that may be inaccurate is Mr. Solano-Ramos's culpability for the underlying conspiracy to commit second-degree murder: Mr. Solano-Ramos "ple[d] no contest to this very serious charge despite the fact that he had always insisted that he was innocent and the investigation of his attorney . . . turned up nothing to contradict this." Rec. vol. IV, doc. 17, at 5-6. *See United States v. Harris*, 447 F.3d 1300, 1306 (10th Cir. 2006) ("Rule 32 requires the defendant to affirmatively point out any fact in the PSR that he contends is inaccurate.").

In the end, however, the only *fact* at issue is the *existence of the state court conviction*, and Mr. Solano-Ramos does not contest this fact for good reason. It is well-established that Mr. Solano-Ramos may not, in this proceeding, attack the validity of his previous state court conviction. The Supreme Court has stated explicitly that "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Lackawanna County Dist. Atty v. Coss*, 532 U.S. 394, 403-04 (2001); *see United States v. Delacruz-Soto*, 414 F.3d 1158, 1165 (10th Cir. 2005) (applying *Lackawanna* in a direct appeal). Moreover, the limited exceptions to this rule are inapplicable here. *Lackawanna*, 532 U.S. at 405-06.

We hold that Mr. Solano-Ramos has not "ma[de] any allegations of factual inaccuracy [and thus] the district court's fact-finding obligation under Rule 32(i)(3)(B) was never triggered." *Rodriguez-Delma,* at 1254.

III. CONCLUSION

Accordingly, we AFFIRM Mr. Solano-Ramos's sentence.

Entered for the Court,

Robert H. Henry
Circuit Judge

-10-