**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES ALBERT FERRELL,

    Defendant - Appellant.

No. 17-1024
(D.C. No. 1:16-CR-00197-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

Defendant-Appellant James Albert Ferrell appeals the district court's application of a four-level sentencing enhancement for possessing a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We REVERSE and REMAND for resentencing.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

A. *Stipulated Facts in the Parties' Plea Agreement*

On October 21, 2016, Ferrell pled guilty to violating 18 U.S.C. § 922(g)(1) for possessing a firearm as a previously convicted felon. See ROA, Vol. I, at 7–12. In the plea agreement, the parties stipulated to the following facts.

> On May 10, 2016[,] CDOC Parole Officers (POs) were on surveillance outside of a home in Colorado Springs associated with James Albert Ferrell. The officers were attempting to serve a warrant on Mr. Ferrell for absconding from parole. The PO's [sic] observed Mr. Ferrell leave the house and approach a vehicle parked outside of the house. One of the PO's [sic] approached Mr. Ferrell who ran into a garage. That officer told him to come out and when he peered into the garage, he observed Mr. Ferrell with a holster with a firearm in it on his right hip. After the PO arrested him, Mr. Ferrell called out to the man in the vehicle: 'ya man, I got popped with a pistol.' The pistol was a Taurus 9mm semi-automatic handgun and was manufactured out of Colorado (in Brazil and imported through Miami, Florida) and is fully functional.
>
> Mr. Ferrell was searched and found with 10 live rounds of 9mm ammo in his pants pocket. Mr. Ferrell has been convicted of at least four felonies, none violent or serious drug crimes, and all out of El Paso County[,] Colorado.

ROA, Vol. I, at 10–11.

B. *Facts in the Presentence Investigation Report*

The probation office incorporated the parties' stipulated facts in the plea agreement into the presentence investigation report. See ROA, Vol. II, at 6–7. The presentence investigation report also included the subsequent two paragraphs— paragraphs ten and eleven—of factual information.

2

According to discovery, the involved parole officers were conducting surveillance on a location where they had learned the defendant may be located. At the time, he was on absconder status from state parole. After approximately two hours at this location, parole agents observed the defendant exit the garage, meet with an individual identified as Cleveland Vance in the alley, and then go back into the garage. As agents approached the garage, one of them observed the defendant through a window. The parole agent entered the garage and gave the defendant loud verbal commands to 'come out with his hands up.' Initially the defendant did not comply with the agent's directives, but the agent persisted and continued toward the defendant. The agent then observed that the defendant had a firearm on his right hip in a holster. After the defendant complied with directives and was placed into custody, the agents conducted a general search. By the window where agents first saw the defendant, agents recovered a clear plastic baggy containing a white powdery substance of suspected methamphetamine. The substance field tested positive for methamphetamine with a field weight of 13.2 grams. A green leafy substance of suspected marijuana was also located and field tested with a weight of 5.7 grams. Also located were a gray scale and a black scale commonly used to weigh illegal narcotics, and a glass pipe commonly used for consumption of illegal narcotics. In plain view on a table, agents found $76.35 in cash and a pair of brass knuckles.

The firearm was loaded with 10 live rounds of 9mm ammunition in a magazine contained within the firearm. Two additional live rounds of 9mm ammunition were located in the defendant's left front pants pocket. As a result of this arrest, the defendant was charged in the El Paso County District Court, in Colorado Springs, Colorado, with Possession with Intent to Distribute a Controlled Substance M/H/K/C 7-112 grams (felony), Controlled Substance-Special Offender-Deadly Weapon (felony), Weapon Possession/Previous Offender-Any Prior Felony (felony) and Possession of Drug Paraphernalia (drug petty offense), Case No. 2016CR2399. This case was dismissed[,] however[,] on June 17, 2016.

Id. at 7.

3

*C. The District Court's Factual Findings at Ferrell's Sentencing Hearing*

The district court found the following facts at the sentencing hearing.

> Mr. Ferrell was on absconder status. The parole officers set up their surveillance outside the place where they expected to find him and did find him. And they saw him leave a garage, meet with someone in an alley, and then reenter the garage. Importantly, they were able to see Mr. Ferrell in a particular location within the garage by looking through a window.
>
> They entered the garage and told Mr. Ferrell to come out with his hands raised. Mr. Ferrell initially did not comply, but as the officers moved towards him, they saw the gun on his hip which changed the dynamics, obviously. They were able to place him in custody.
>
> They then found in the area of the garage where they had seen Mr. Ferrell a bag containing 13.2 grams of methamphetamine and 5.7 grams of marijuana, plus two scales commonly used to weigh narcotics and a glass pipe commonly used for consumption of illegal narcotics. The quantity of meth, although not huge, when in conjunction with the scales, is indicative of drug distribution.
>
> All right. How do you put all that together[?]
>
> If Mr. Ferrell possessed the meth and the scales, then he possessed a firearm and the ammunition with the knowledge that it had the potential of facilitating another felony offense, *i.e.*, drug possession and/or distribution. And the drugs were in close proximity to Mr. Ferrell, the firearm, and the ammunition. It's not unusual to find that drug dealers frequently possess weapons for protection and other purposes. Mr. Ferrell himself had a prior felony conviction for possession for methamphetamine, and he was released form a concurrent sentence that included a meth felony approximately one month before committing the firearm charge.
>
> He was charged in this case, in the state court he was charged with possession with the intent to distribute as well as possession of a deadly weapon and a weapon by a previous offender in [the] El Paso case, case 16-cr-2399. So in this very fact scenario, he was charged both with the drugs and with the possession by a

4

prohibited person under state law. But those charges were dismissed. Presumably because of the federal charge that brings us here today.

I look at the totality of those circumstances. And I conclude that I can reasonably infer and do reasonably infer that Mr. Ferrell possessed the drugs and the drug paraphernalia. Could I say that beyond a reasonable doubt? No. Mr. O'Hara has offered a possible explanation; namely, that the person who lived at the residence where the garage was had some type of history himself and maybe those were his; but on a preponderance of the evidence basis I infer and find that it is probable that these were possessed by the defendant and not a mere coincidence that he happened to be in the part of the garage where he was arrested where all these same items were found.

Therefore, I conclude that the enhancement under 2K2.1(b)(6)(B) applies; and from that I conclude that the offense level in fact is 15, as calculated by the probation office.

ROA, Vol. III, at 39–41.

*D. Procedural Background and the Sentencing Dispute*

The plea agreement did not indicate Ferrell would be subject to a sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). In the plea agreement, the parties determined Ferrell's total offense level was 12. ROA, Vol. I, at 11. Ferrell's offense level of 12 consisted of a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6) and a two-level reduction for acceptance of responsibility under U.S.S.G. §§ 3C1.1 or 3E1.1. Id. Ferrell and the government determined that "no specific offense characteristics" were applicable. Id. The parties estimated Ferrell's criminal history category "may be as high as V" and agreed on a sentencing guideline range of 27–33 months in prison. Id. at 11–12. In exchange for Ferrell's guilty plea, the government would recommend a within-guideline sentence. Id. at 8.

5

The probation office calculated the same base offense level of 14. ROA, Vol. II, at 33. The probation office then recommended a three-level decrease for acceptance of responsibility. Id. at 34. However, the probation office believed Ferrell was subject to a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B).[1] Id. at 33. The probation office determined Ferrell had 21 criminal history points, placing him in criminal history category VI, rather than V. Id. at 41. The presentence investigation report's guideline sentencing range was 41–51 months in prison. Id. at 46. The probation office recommended 51 months in prison. Id. at 50.

Ferrell objected to the U.S.S.G. § 2K2.1(b)(6)(B) four-level sentencing enhancement both in writing, in response to the presentence investigation report, and orally, at sentencing. ROA, Vol. I, at 21–27; ROA Vol. III, at 18–19, 24–25. In his objections to the presentence investigation report, Ferrell argued the government did

---

[1] Section 2K2.1(b)(6)(B) of the sentencing guidelines provides for a four-level sentencing enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." Part B of Application Note 14 explains that the four-level enhancement applies "in the case of a drug trafficking offense" (including possession of a controlled substance with intent to distribute) "in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Id. cmt. n.14(B); U.S.S.G. § 2L1.2 cmt. n.2. When there is no drug trafficking offense, for "another felony offense"—or "any federal, state, or local offense, other than the explosives or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained," (including possession of a controlled substance), U.S.S.G. § 2K2.1 cmt. n.14(C)—the four-level enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense." U.S.S.G. § 2K2.1 cmt. 14(A).

not prove that he possessed drugs, nor did the record support a finding of possession. ROA, Vol. I, at 21–23. Ferrell also argued that there was insufficient evidence of a drug trafficking offense, or of a connection between the drugs and the firearm on his person. Id. at 24–27. At sentencing, Ferrell maintained that the government's and the probation department's evidence was insufficient to support the enhancement, as it showed only "that Mr. Ferrell was located in a garage where there happened to be drugs found." ROA, Vol. III, at 19; see also id. at 24–25 ("It just doesn't appear that the mere presence inside of a location [where there are drugs] is going to be sufficient for that connection to apply."). The government supported the imposition of the four-level enhancement, but the government did not change its sentencing recommendation of 27–33 months in prison because it felt "constrained by the Plea Agreement." ROA, Vol. I, at 35.

The district court applied the four-level enhancement, ROA, Vol. III, at 41, imposed a 41-month prison sentence and a three-year period of supervised release, ROA, Vol. I, at 71–72, and entered final judgment on January 20, 2017. Id. at 70.

Ferrell filed a timely notice of appeal on January 24, 2017. Id. at 77–78. On November 21, 2017, we retained jurisdiction, abated this appeal, and remanded this case to the district court to: (i) clarify a fact in the record, (ii) resolve two factual discrepancies, and (iii) determine anew whether the factual record supports a finding of possession of a controlled substance by Ferrell and whether the four-level sentencing enhancement applies. The district court has now issued its order in response to our remand, and the parties have filed supplemental briefing.

II

The sole issue raised by Ferrell is whether the district court erred in applying the four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense.[2]

In our November 21 order, we noted it is unclear from the record when a parole officer observed Ferrell through a window in the part of the garage where drugs and drug paraphernalia were later recovered. We also highlighted two material factual discrepancies between the district court's findings of fact at sentencing— which closely mirror those in the presentence investigation report—and the stipulated facts in the parties' plea agreement: (i) whether Ferrell left the house or the garage before approaching a car parked outside, and (ii) whether Ferrell first entered the garage because he was fleeing from the parole officers. On remand, in an attempt to resolve the two material fact discrepancies, the district court adopted as its factual findings the presentence investigation report.

Following remand, our task on appeal remains unchanged, as does the lack of clarity in the factual record. We emphasized the materiality of the factual inconsistencies in our remand order, noting the factual findings listed above "are

---

[2] "[W]e review the district court's interpretation of the sentencing guidelines de novo, [and] we review its factual findings for clear error." United States v. Hoyle, 751 F.3d 1167, 1174 (10th Cir. 2014). "A finding of fact is 'clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing the evidence, is left with a definite and firm conviction that a mistake has been made." United States v. Pulliam, 748 F.3d 967, 970 (10th Cir. 2014) (citation omitted). "This court [also] reviews compliance with the Rules of Criminal Procedure de novo." United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006).

critical to the ultimate question of whether Ferrell possessed the drugs and the drug paraphernalia in the garage." Remand Order, at 11. Though the district court resolved the two factual discrepancies we identified, there is no evidentiary support for the district court's factual findings.[3] As the record now stands, we conclude the evidence does not support a finding that Ferrell possessed a controlled substance. As a result, the four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is unsupported.

A. *The Factual Ambiguity: When a Parole Officer Observed Ferrell in the Garage*

First, we identified that, while the parties' plea agreement, the presentence investigation report, and the district court's factual findings at sentencing all indicate that a parole officer observed Ferrell through a window in the general area of the garage where drugs and drug paraphernalia were later recovered, it is not clear when

---

[3] We note that the affidavit of probable cause in support of Ferrell's arrest was not presented to the district court. This affidavit first surfaced as an attachment to the government's response brief on appeal. See Aple. Br., at 34–36; see also Remand Order, at 11 n.1. The affidavit would have provided the district court factual predicates tending to show possession. The affidavit states: (i) Ferrell was observed "exiting the garage," "quickly" approaching Cleveland Vance in the alley, and then going "back into the garage"; (ii) "in Ferrell's left rear pocket was an individual key," and when asked where the key went, Ferrell responded, "it goes to the house"; (iii) while being transported to jail for booking, Ferrell asked where his money was, stating he "had 86 bucks," and he did not know whether "it [wa]s inside or" on him; and (iv) the owner of the house "stated that Ferrell c[ame] over several times a week and consume[d] Marijuana." Affidavit of Probable Cause, at 1–2. The government's failure to provide the district court with the affidavit precluded the district court and us from its consideration. See United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir. 2000) ("This court will not consider material outside the record before the district court . . . . Rule 10(e) 'allows a party to supplement the record on appeal' but 'does not grant a license to build a new record' . . . . Because the affidavit was not before the district court, Rule 10(e) does not countenance supplementing the record in this instance.'") (citation omitted).

the officer observed Ferrell through the window in this part of the garage. See ROA, Vol. I, at 10 ("One of the PO's [sic] approached Mr. Ferrell[,] who ran into a garage. That officer told him to come out and when he peered into the garage, he observed Mr. Ferrell with a holster with a firearm in it on his right hip."); ROA, Vol. II, at 7 ("After approximately two hours at this location, parole agents observed the defendant exit the garage, meet with an individual identified as Cleveland Vance in the alley, and then go back into the garage. As agents approached the garage, one of them observed the defendant through a window."); ROA, Vol. III, at 39 ("And they saw him leave a garage, meet with someone in an alley, and then reenter the garage. Importantly, they were able to see Mr. Ferrell in a particular location within the garage by looking through a window."). Though not explicit, it appears the district court found at sentencing that the first time the parole officer observed Ferrell in the garage was not sometime during the alleged two-hour long surveillance of the premises, but rather after Ferrell had fled into the garage. We asked the district court to clarify when the parole officer observed Ferrell in the garage in the general area where the drugs and drug paraphernalia were later recovered.

In its order following remand, the district court found, "a parole officer [first] observed Mr. Ferrell in the garage . . . after [Ferrell] entered the garage as opposed to any other time during the officer's two-hour surveillance." Order Following Remand, at 10. The district court explicitly found, "Ferrell was observed to be in th[e] general area [where the drugs and drug paraphernalia were later recovered] when one of the officers looked into the garage through the window after Mr. Ferrell

10

went into the garage following his alley meeting with the other individual." Id. at 11. Neither party disputes these factual findings, nor does the record contradict them. We find no error as regards this factual clarification.

*B. The Factual Discrepancies*

    *i. Whether Ferrell First Left the House or the Garage*

The first factual discrepancy we identified in our November 21 order is whether parole officers saw Ferrell leave the <u>house</u> or the <u>garage</u> prior to approaching a vehicle parked outside of the house. The district court found at sentencing that Ferrell left the garage. ROA, Vol. III, at 39 ("[T]hey saw him leave a garage, meet with someone in an alley, and then reenter the garage."). The presentence investigation report likewise states that Ferrell left the garage before approaching the vehicle. ROA, Vol. II, at 7 ("[P]arole agents observed the defendant exit the garage, meet with an individual identified as Cleveland Vance in the alley, and then go back into the garage."). However, this factual finding directly contradicts the parties' stipulated facts in the plea agreement that Ferrell left the house, not the garage, before approaching a vehicle parked outside. ROA, Vol. I, at 10 ("The PO's [sic] observed Mr. Ferrell leave the house and approach a vehicle parked outside of the house.").

Ferrell objected at the sentencing hearing to the district court's factual finding that he left the garage, not the house. ROA, Vol. III, at 47 ("The Court in its factual statement stated that [Ferrell] left the garage. That is from a paragraph that the probation department asserted . . . . I would maintain an objection to that portion of

11

the Court's findings."). We also note that, "[a]t sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). The district court did not rule on Ferrell's objection as regards the house/garage distinction.

In its order following remand, the district court noted it "cannot resolve the discrepancy with any certainty." Order Following Remand, at 8. Rather than deferring to the parties' stipulated facts in the plea agreement—which the parties presumably agreed upon following discussion and negotiation—the district court adopted the facts as recited in the presentence investigation report. The court stated, if it "had to pick one or the other of the two versions [it] would pick the Probation Department's version." Id. at 9. The district court then justified this approach by stating its reliance on the credibility and diligence of probation office personnel. The court speculated, "the probation officer probably found the information in the officers' reports," and found credible "the probation officers in this Probation Department, and Mr. Burney in particular." Id. at 9.

*ii. Whether Ferrell Fled to the Garage*

The second factual discrepancy we identified is whether Ferrell fled to the garage upon seeing a parole officer approaching him, or whether he was observed moving about the premises and entering the garage prior to seeing a parole officer pursuing him. The district court found that parole officers observed Ferrell "reenter"

12

the garage. ROA, Vol. III, at 39 ("[T]hey saw him leave a garage, meet with someone in an alley, and then reenter the garage."). Similarly, the presentence investigation report states that Ferrell went "back into the garage." ROA, Vol. II, at 7 ("[P]arole agents observed the defendant exit the garage, meet with an individual identified as Cleveland Vance in the alley, and then go back into the garage."). These two factual findings imply Ferrell simply entered the garage, without an external stimulus prompting him to do so, and before noticing that parole officers were near the premises or pursuing him. This contradicts a stipulation contained in the plea agreement. The parties' stipulated that one of the parole officers moved toward Ferrell while he was outside of the house, at which point Ferrell "ran into a garage." ROA, Vol. I, at 10 ("One of the PO's [sic] approached Mr. Ferrell[,] who ran into a garage.").

Here, the presentence investigation report, which the district court largely incorporated into its own findings of fact, contradicts itself by explicitly adopting the parties' stipulated facts in the plea agreement but then finding different facts. As mentioned, the stipulated facts are that Ferrell emerged from the house in the first instance, not from the garage where the drugs and drug paraphernalia were found, and that he "ran into" the garage upon being approached by a parole officer. ROA, Vol. I, at 10–11. While explicitly adopting these factual findings in paragraph eight, the presentence investigation report goes on to contradict those factual findings in paragraph ten, stating "parole agents observed the defendant exit the garage, meet

13

with an individual . . . in the alley, and then go back into the garage." ROA Vol. II, at 6–7.

In its order following remand, the district court stated, "if [it] had to decide, [it] would infer that Mr. Ferrell did not see the officers before he went into the garage," Order Following Remand, at 10, again adopting the presentence investigation report as its factual finding. In doing so, the district court reasoned that this finding "is at least consistent with both" the plea agreement and the presentence investigation report, as "neither . . . clearly states that [Ferrell] saw the officers and ran or fled to the garage." Id. It is true that neither the plea agreement nor the presentence investigation report explicitly state that Ferrell saw a parole officer prior to fleeing or walking into the garage.

However, the district court's factual finding that Ferrell did not see an officer prior to entering the garage is not consistent with both factual versions. In fact, the district court's own logical inferences contradict its assertion of congruity. The district court stated:

> The Plea Agreement states that "[o]ne of the PO's approached Mr. Ferrell who ran into a garage." ECF No. 22. Even that statement does not definitely establish that Mr. Ferrell saw the PO before he ran into the garage, although that is the inference I would draw.

Order Following Remand, at 9. We draw the same inference from the parties' stipulated facts—that Ferrell saw a parole officer which prompted him to "r[u]n into the garage." The district court continued:

14

> The . . . Presentence Investigation Report states only that the "parole agents observed the defendant exit the garage, meet with an individual identified as Cleveland Vance in the alley, and then go back into the garage." ECF Nos. 25 at ¶ 10 and 29 at ¶ 10. That doesn't address whether Mr. Ferrell saw the officers before he entered the garage, but the inference I would draw from it is that he did not.

Id. at 9–10. We agree. But this inference is the exact opposite of the inference we (and the district court) draw from the plea agreement.

### iii. Legal Error

As regards the two factual discrepancies, the district court adopted the presentence investigation report as its findings. In doing so, the district court erred. "[A] sentencing court does not satisfy its Rule 32 obligation by 'simply adopting the presentence report as its finding.'" United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006) (quoting United States v. Guzman, 318 F.3d 1191, 1198 (10th Cir. 2003)). Moreover, "the purpose of Rule 32 is to ensure that sentencing is based on reliable facts found by the court itself after deliberation." United States v. Begay, 117 F. App'x 682, 685 (10th Cir. 2004) (emphasis added) (unpublished opinion). The district court's own acknowledgement that it "cannot resolve" our identified discrepancies "with any certainty," Order Following Remand, at 8, and the district court's guesses as to the facts because "it had to pick one or the other," id. at 9, leave us unconvinced that Ferrell's sentence is based on reliable facts.

We next discuss the implication of the two factual findings that lack evidentiary support on the question of whether Ferrell's sentence enhancement is

15

supported by evidence that he possessed the drugs and the drug paraphernalia in the garage.

*C. The Sentencing Enhancement*

Overlooking the factual discrepancies and factual ambiguity, the district court found at sentencing that Ferrell possessed the drugs and drug paraphernalia and determined it was "not a mere coincidence that he happened to be in the part of the garage where . . . all these same items were found," enhancing Ferrell's sentence under U.S.S.G. § 2K2.1(b)(6)(B). ROA, Vol. III, at 39–41. But an obvious precondition for possession of a controlled substance and for possession of a controlled substance with intent to distribute is possession. There are two types of possession—"actual" and "constructive." See Henderson v. United States, 135 S. Ct. 1780, 1784 (2015). "Actual possession exists when a person ha[d] direct physical control over a thing." Id. "Constructive possession is established when a person, though lacking such physical custody, still ha[d] the power and intent to exercise control over the object." Id. There was insufficient evidence presented by the government, or found by the district court, to support a conclusion that Ferrell possessed the drugs found in the garage.

In its order following remand, the district court again determined the enhancement was appropriate. Order Following Remand, at 11. The district court noted, "Ferrell was arrested in the garage with a loaded firearm on his person," "methamphetamine and two scales were found in the same general area of the

16

garage," and Ferrell was convicted in 2013 "for possession of methamphetamine."

Id. at 11–12. The district court also listed the unknowns:

> We do not know why [Ferrell] met with the individual in the alley or whether he engaged in a drug transaction with him. We do not know whether there were drugs in the house at any time. We do not know whether the individual who is said to have resided in the house . . . had any drugs or drug paraphernalia, then or ever. We do not know why Mr. Ferrell entered the garage rather than the house.

Id. at 11.

The district court's "we do not know[s]" highlight perfectly the lack of evidentiary support for the enhancement—we know very little from the record, and a "mere coincidence that" Ferrell was in the proximity of the contraband is all the record supports. We do not have evidentiary support for the district court's factual findings that (i) Ferrell left the garage from where the drugs and drug paraphernalia were later recovered, rather than the house, in the first instance; and (ii) Ferrell did not flee to the garage, but was moving about the premises of his own volition. Nor do we have a factual finding that a parole officer observed Ferrell in the garage sometime during the alleged two-hour long surveillance of the premises, not upon Ferrell's fleeing into the garage. The following evidence remains. Though we do not know for what purpose or for how long, Ferrell—who had a loaded firearm in a holster on his right hip and additional ammunition in the front left pocket of his pants—met with an individual named Cleveland Vance in an alley behind a house that he did not own. ROA, Vol. II, at 7; ROA, Vol. III, at 39–41. Ferrell was also seen in the general area of a garage that he did not own. Id. He was seen near

17

methamphetamine, marijuana, two scales, and a glass pipe. Id. It is unclear how far from Ferrell a pair of brass knuckles and $76.35 in cash were seen "[i]n plain view on a table" in the garage. ROA, Vol. II, at 7. We further know Ferrell was previously convicted of possession of methamphetamine. ROA, Vol. III, at 39–41. Finally, the facts of this case also gave rise to a state court charge of possession with intent to distribute a controlled substance, which was later dismissed. ROA, Vol. II, at 7; ROA, Vol. III, at 39–41.

Although these facts are known, they demonstrate only proximity to the drugs, and other unknown facts bring a finding of possession into doubt. For instance, we do not know how often Ferrell frequented the garage, which could have indicated his familiarity with the garage and its contents and served as evidence of his control over the drugs. Indeed, as an initial matter, the record lacks evidence of joint occupancy of the premises from which contraband was recovered, and the government further failed to present evidence showing a connection between Ferrell and the contraband. See United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000).

For these reasons, resolution of the factual discrepancies between the parties' stipulated facts and the presentence investigation report was critical in this case, leading us to remand in the first instance rather than moving forward with a ruling on the merits. Resolved against Ferrell, these pieces of evidence lend support for the finding that Ferrell intended to exercise dominion and control over the drugs. See United States v. Little, 829 F.3d 1177, 1182 (10th Cir. 2016). Resolved in favor of Ferrell, without evidence of Ferrell's familiarity and control over the garage and the

18

drugs therein, the record does not support a finding of drug possession. Without a finding of possession, we cannot sustain the four-level sentencing enhancement based on either possession of a controlled substance or possession of a controlled substance with the intent to distribute.

III

We therefore REVERSE and REMAND this case for resentencing.

Entered for the Court

Mary Beck Briscoe
Circuit Judge